UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MILAGROS T.,[1]

                            Plaintiff                    DECISION and ORDER

-vs-

                                                6:24-CV-6460-CJS

COMMISSIONER OF SOCIAL
SECURITY,

                            Defendant.
_____

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review a final

determination of the Commissioner of Social Security ("Commissioner" or "Defendant")

denying Plaintiff's application for Supplemental Security Income ("SSI") benefits.   Now

before the Court is Plaintiff's application for judgment on the pleadings (ECF No. 7) and

Defendant's cross-motion for the same relief (ECF No. 11).   For reasons discussed

below, Plaintiff's application is granted, Defendant's application is denied, and the matter

is remanded to the Commissioner for further administrative proceedings.

## STANDARDS OF LAW

The Commissioner decides applications for disability benefits using a five-step

sequential evaluation process:

> A five-step sequential analysis is used to evaluate disability claims. *See* 20
> C.F.R. §§ 404.1520, 416.920.   First, the Commissioner considers whether
> the claimant is currently engaged in substantial gainful activity. If he is not,

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

1

the Commissioner next considers whether the claimant has a severe impairment[2] which significantly limits his physical or mental ability to do basic work activities.[3] If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in the regulations [or medically equals a listed impairment]. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity [("RFC")] to perform his past work.[4] Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform. The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five.[5]

*Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (citations and internal quotation

---

[2] "At step two, the ALJ must determine whether the claimant has a 'severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 404.1509, or a combination of impairments that is severe and meets the duration requirement.' *Id.* If not, the claimant is deemed not disabled, and the inquiry ends." *Koch v. Colvin*, 570 F. App'x 99, 101 (2d Cir. 2014); *see also*, 20 C.F.R. § 404.1520(a)(4)(ii) ("At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.").

[3] The Commissioner's Regulations define basic work-related activities as follows: "Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include— (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting." 20 C.F.R. § 404.1522 (West 2023).

[4] Residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." *Bushey v. Berryhill*, 739 F. App'x 668, 670–71 (2d Cir. 2018) (citations omitted); *see also*, 1996 WL 374184, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

[5] "The Commissioner's burden at step five is to show the existence of possible employment for an individual with the RFC determined by the ALJ in the fourth step of the sequential analysis." *Smith v. Berryhill*, 740 F. App'x 721, 726–27 (2d Cir. 2018) (citation omitted). The ALJ typically does this either by resorting to the medical vocational "grids" or, where the claimant has a non-exertional impairment, by taking testimony from a vocational expert [("VE")]. *See, Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986) ("[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines. A more appropriate approach is that when a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations—so that he is unable to perform the full range of employment indicated by the medical vocational guidelines, then the Secretary must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.").

2

marks omitted).

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim, in which "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West).

The issue to be determined by the court in such an action is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also, Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the decision if it is supported by substantial evidence and the correct legal standards were applied.") (citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the [administrative law judge] [("]ALJ[)"]. Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

If the Commissioner applied the correct legal standards, the court next "examines

3

the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Tejada v. Apfel*, 167 F.3d at 773; *see also*, 42 U.S.C.A. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").   Substantial evidence is defined as "more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Tejada v. Apfel*, 167 F.3d at 773 (citation omitted).

> The substantial evidence standard is a very deferential standard of review—even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered." *Id*.

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted); *see also, Snyder v. Comm'r of Soc. Sec*., No. 22-277-CV, 2023 WL 1943108, at *1 (2d Cir. Feb. 13, 2023) ("While the substantial evidence standard requires we find more than a mere scintilla of support for the Commissioner's decision, it is still a very deferential standard of review requiring us to uphold the Commissioner's findings unless a reasonable factfinder would *have to conclude otherwise*.") (emphasis in original; citations and internal quotation marks omitted); *Schillo v. Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022) ("We may vacate the agency's disability determination only if it is based on legal error or unsupported by 'substantial evidence'—that is, if no reasonable factfinder could have reached the same conclusion as the ALJ."); *Lisette R. o/b/o C.J.O. v. Kijakazi*, No. 3:22-CV-00784-TOF, 2023 WL 6357961, at *3 (D.

4

Conn. Sept. 29, 2023) ("A disability determination is supported by substantial evidence if a "reasonable mind" could look at the record and make the same determination as the Commissioner.  When the decision is supported by substantial evidence, the Court defers to the Commissioner's judgment.") (citations omitted).

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted).  "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted).  "In other words, this Court must afford the Commissioner's determination considerable deference, and 'may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review.'" *Melia v. Colvin*, No. 1:14-CV-00226 MAD, 2015 WL 4041742, at *2 (N.D.N.Y. July 1, 2015) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir.1984)).

When considering whether a particular finding or decision is supported by substantial evidence, a court also may not rely on any *post hoc* rationalizations offered

5

by the Commissioner.    However, a court may consider evidence that was evidently considered by the Administrative Law Judge ("ALJ") even if it was not expressly mentioned in the administrative decision. *See, Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability. *E.g., Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir.1982). In *Berry*, we noted that, although we would remand for further findings or a clearer explanation where we could not fathom the ALJ's rationale "in relation to evidence in the record," we would not remand where "we were able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." *Id*.[; [s]*ee also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir.1981) ("Notwithstanding the apparent inconsistency between the reports of [two doctors], we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony ....")."); *see also, Loni S. v. Comm'r of Soc. Sec*., No. 3:22-CV-805 (CFH), 2023 WL 4195887, at *19 (N.D.N.Y. June 27, 2023) ("The Court is required to look at the entire ALJ's decision when reviewing for substantial evidence. *See John L. M. v. Kijakazi*, No. 5:21-CV-368 (BKS/TWD), 2022 WL 3500187, at *2 (N.D.N.Y. Aug. 18, 2022) (citations omitted) ('[W]hile a reviewing court may not affirm the Commissioner's decision based on an impermissible *post-hoc* rationalization, it may affirm where the ALJ's consideration of the relevant factors can be gleaned from the ALJ's decision as a whole.').").

6

FACTUAL and PROCEDURAL BACKGROUND

The reader is presumed to be familiar with the factual and procedural history of this action.   Briefly, this is Plaintiff's second time in federal court litigating the same claim for SSI benefits.   The Commissioner previously denied Plaintiff's claim for benefits based on a decision by ALJ Dale Black-Pennington ("the ALJ"), dated October 17, 2019, in which the ALJ found that, despite Plaintiff's severe impairments of gastroesophageal reflux disorder ("GERD"), depression, anxiety, and obesity, Plaintiff could perform less-than-a-full range of work at the medium exertional level.   Throughout the ALJ's decision, she discussed the various evidence that purportedly supported that finding, by stating, in pertinent part:

> [T]reating source reports from 2016 to 2019 (Exhibit 13F) contain numerous references that the claimant made to her providers regarding work she was performing that involved cake decorating, baking, and selling arts/craft/décor items.
>
> ***
>
> In reports submitted to the Administration (Exhibits 4E, 6E, 10E, 11E) and in testimony, the claimant indicated that she experiences back and leg pain with swelling that makes standing and walking difficult, and that postural activities increase her pain.  . . .  [H]owever, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> Evidence fully supports the claimant's ability to perform medium work as defined in her residual functional capacity. For example, a consultative examination [by Samuel Balderman, M.D. ("Balderman")] from May 2015 (Exhibit 5F) documents a remote history of bilateral ankle fractures with evidence of right sided soft tissue swelling in the right foot (Exhibit 5F), but the examination findings include no joint instability or tenderness, a normal gait and stance, a 40% squat, and no difficulty rising from a seated position. Full motion of both the cervical and lumbar spine were also documented,

7

and strength was full in all extremities. In context of the above findings and observations, great weight is granted to opinion evidence from the consultative examiner, who indicated that the claimant had minimal physical limitations.

***

Daily activities endorsed by the claimant included an ability to perform self-care and hygiene, and to cook, clean, do laundry, shop, take public transportation, and watch television.

***

[Examination findings in Plaintiff's medical treatment records] were essentially normal and included a comfortable and alert appearance, no pain, rigidity, or guarding of the abdomen, normal neurologic findings including a normal gait, and a normal mood and affect with "no anxiety/agitation."

***

[Treatment provider] Rebecca Flynn, PA, [also] documents . . . an absence of positive physical findings; she indicated that upon examination and records review, there was "no medical necessity [for claimant] to be out of work".

In June 2016, similar findings were noted by [treatment provider] Roger Chapman, PA (Exhibit 8F), who indicated that he completed social services forms in which he indicated that the claimant could work "40 hours a week with accommodations for mental health three times per week."

***

[A] consultative internal medicine examination [by Harbinder Toor, M.D. ("Toor")] from August 2016 contains findings and opinion evidence that are not fully consistent with treating source and other evidence, and the opinion of this one-time non-treating source is not given significant weight. The examiner opined that the claimant had moderate to marked limitations for bending and lifting and moderate limitations for standing, walking, and sitting for long periods, and interruption to her routine due to abdominal pain. It is noted that imaging of the lumbar spine that was taken at the exam was negative, but findings at the exam included a moderately pained appearance, limited lumbar motion, a positive straight leg raise, a 20% squat, leg tenderness, and difficulty rising from a seated position. Other findings did include full and painless motion of all upper and lower extremity joints with full strength and no sensory deficit or reflex abnormality.

8

In contrast to the aforementioned consultative exam, subsequent reports indicate that the claimant only occasionally visited her primary care provider for routine treatment of minor ailments, for medication refills, and for the completion of social services paperwork (Exhibits 12F, 14F-16F). While knee pain was alleged at some exams, imaging was completed and was negative for abnormalities.

*** 

In sum, the above [RFC] assessment is supported by the complete record which documents a conservative and successful treatment course for the claimant's impairments, as well as the claimant's ability to adequately perform daily activities and to perform (apparently unreported) work activity on an ongoing basis.

Tr. 24-29.

Following the administrative denial of her claim, Plaintiff commenced an action in this court to review the Commissioner's decision, which was assigned to the Honorable William B. Mitchell Carter, U.S. Magistrate Judge ("Judge Carter"), who had jurisdiction to decide the matter by consent of the parties.   Judge Carter remanded the matter to the Commissioner for further administrative proceedings, after finding that the ALJ's RFC finding was insufficient to permit adequate judicial review. *See*, Judge Carter's Decision and Order dated June 14, 2022, at p. 13 ("Overall, there are inadequacies in the ALJ's analysis that frustrate meaningful review.")

Judge Carter found that the ALJ had properly weighed the various medical opinions, and further noted that the record contained various evidence inconsistent with Plaintiff's claim of total disability, including statements from her own treating doctors that she was capable of working, which the ALJ had cited in rendering her RFC finding.

However, Judge Carter nevertheless concluded that the Commissioner's RFC

9

analysis was deficient, stating:

> [T]he ALJ failed to provide sufficient analysis to support her RFC determination for medium work.
>
> The ALJ's otherwise thoroughly written decision fails to provide sufficient analysis resolving conflicting evidence and connecting the record evidence to her RFC determination for medium work. Because the evidence in the record is widely varying, and vague, additional analysis is required. *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."). The ALJ stated in her written decision the RFC was "supported by the complete record which documents a conservative and successful treatment course" as well as Plaintiff's "ability to adequately perform daily activities and to perform (apparently unreported) work activity on an ongoing basis." (T. 29.)
>
> However, the ALJ's written decision fails to connect those pieces of evidence to the ability to perform the exertional demands of medium work.
>
> To be sure, the record documents conservative treatment, contains statements from providers Plaintiff was able to work, and Plaintiff was performing some work-related activity such as cake decorating and childcare; however, without additional analysis it is unclear to the Court how this evidence supports the exertional demands of medium work. Overall, there are "inadequacies in the ALJ's analysis [that] frustrate meaningful review." *Cichocki*, 729 F.3d at 177. In other words, on remand, the ALJ must conduct an analysis that will permit adequate review, and the ALJ's conclusions must be supported by relevant medical evidence. *Winn v. Colvin*, 541 F. App'x. 67, 70 (2d Cir. 2013); *see Thomas v. Berryhill*, 337 F. Supp. 3d 235, 244 (W.D.N.Y. 2018) (citing *Sewar v. Berryhill*, 2018 WL 3569934, *2 (W.D.N.Y. July 25, 2018) ("What is required is that the ALJ explain the bases for his findings with sufficient specificity to permit meaningful review.")). Therefore, remand is necessary for a proper physical RFC determination.

Tr. 1227-1228.

Following such remand to the Commissioner, the same ALJ conducted a new

hearing, based upon an updated and expanded record, which included a new functional assessment from Plaintiff's treating physician's assistant, Christine Humbert, P.A. ("Humbert"), and issued a new decision, dated March 29, 2024, again finding that Plaintiff was not disabled, since she was capable of a reduced range of medium work.   In that regard, prior to reaching the fourth step of the sequential evaluation, the ALJ made various findings and statements concerning Plaintiff's physical abilities, indicating in pertinent part:

> [T]reating source reports from 2016 to 2019 (Exhibit 13F) contain numerous references that the claimant made to her providers regarding work she was performing that involved cake decorating, baking, and selling arts/craft/décor items. However, the claimant's certified earnings record (Exhibit 19D) does not reflect any earnings within the past fifteen years, and the claimant has testified that she has not performed work activity. Therefore, there is insufficient evidence to determine whether the claimant has been engaged in the performance of substantial gainful activity since May 23, 2016.
>
> The claimant has the following severe impairments: gastroesophageal reflux disorder, depressive disorder, anxiety disorder, alcohol dependence in remission, status/post right ankle fracture and repair, obesity, tension headaches (20 CFR 416.920(c)).
>
> ***
>
> The claimant [also] has impairments, discussed below, that are not severe as evidence does not indicate that they significantly limit the ability to perform basic work activity.  . . .   [Specifically,] [t]he claimant also was diagnosed with fibromyalgia in September 2022 (Exhibit 21F), but subsequent reports (Exhibits 21F, 23F) do not indicate that fibromyalgia was one of the claimant's treating diagnoses and no additional treatment was provided for this condition.
>
> The claimant has [also] occasionally complained of leg and/or knee pain (Exhibits 8F, 12F, 16F, 23F). However, left knee imaging from November 2017 (Exhibit 12F at 25) showed only small patellar spurs with no acute

11

osseous abnormality, and right knee imaging from June 2023 (Exhibit 23F at 11) showed only small patellar spurs, mild joint space narrowing, and other findings suggestive of a prior MCL injury or inflammation, with no acute fracture or dislocation noted. The aforementioned medical reports and other evidence (Exhibits10F, 21F) indicate occasional knee area tenderness and subjective pain complaints but typically document a normal gait, full lower extremity joint motion, and no weakness. The record documents conservative treatment with medication for pain and does not indicate that surgery is warranted.

***

In this case, evidence (discussed in more detail later in this decision) does not indicate that the claimant requires an assistive device for ambulation, nor does evidence indicate that the claimant has any limitation in the ability to use her upper extremities for fine and gross motor movements.

Tr. 1149-1151.

Later in the decision, the ALJ found, as already mentioned, that Plaintiff had the RFC to perform less than a full range of medium work, an exertional category that typically involves being on one's feet most of the day while performing a great deal of lifting and carrying.   In particular, the Social Security Administration generally describes medium work as follows:

The regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.

The considerable lifting required for the full range of medium work usually requires frequent bending-stooping (Stooping is a type of bending in which

12

a person bends his or her body downward and forward by bending the spine at the waist.) Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward.)  . . .  In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

SSR 83-10.[6]

Consistent with that description, here, the ALJ found, in pertinent part, that Plaintiff could lift 25 pounds frequently and 50 pounds occasionally and stand and/or walk for 6 hours.  However, the ALJ limited Plaintiff to occasional, as opposed to frequent, crouching, stooping, and squatting. Tr. 1153.  The ALJ explained that finding by stating, in pertinent part:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except she is able to lift and/or carry 50 pounds occasionally and 25 pounds frequently; she can stand and/or walk 6 of 8 hours; she can sit 6 of 8 hours; she is able to frequently but not continuously climb stairs/ramps; she is not able to climb ladders, ropes, and scaffolds; she is able to occasionally crouch, stoop, squat and crawl; she is able to understand, remember, and apply simple instructions and directions; she is not able to understand, remember, and apply detailed/complex instructions; she is able to perform simple routine tasks, and is able to occasionally manage change to the workplace environment and/or tasks.
>
> ***
>
> In reports submitted to the Administration (Exhibits 4E, 6E, 10E, 11E) and in testimony, the claimant indicated that she experiences stomach pain and leg pain that makes standing and walking difficult, and that postural activities increase her pain. She indicated that she prefers not to go out alone, that she avoids crowds, is easily angered, is forgetful, and that her

---

[6]  Titles II & Xvi: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2, SSR 83-10 (S.S.A. 1983).

social activities are limited. She reportedly has difficulty following oral and written instructions, and difficulty maintaining focus.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

The physical limitations set forth in the claimant's [RFC] finding are provided in context of a view of the subjective and objective evidence in a manner that is most favorable to the claimant, which includes subjective allegations of pain, the effects of obesity, and symptoms related to nonsevere impairments. Prior to the claimant's application for benefits, a consultative examination from May 2015 (Exhibit 5F) documents a remote history of a left ankle fracture in 1995 and a right ankle fracture in 2014; other medical evidence (Exhibit 2F) documents the right ankle fracture in 2014. The aforementioned reports indicate that the claimant's right ankle improved following surgery and physical therapy, and that postoperative imaging showed appropriate alignment. The consultative examiner noted that there was evidence of right sided soft tissue swelling in the right foot (Exhibit 5F), but the examination findings include no joint instability or tenderness, a normal gait and stance, a 40% squat, and no difficulty rising from a seated position. Full motion of both the cervical and lumbar spine were also documented, and strength was full in all extremities. In context of the above findings and observations, some weight is granted to opinion evidence from the consultative examiner, who indicated that the claimant had minimal physical limitations at that time.

Other treating source evidence (Exhibit 14F) documents upper right quadrant pain in the setting of symptomatic cholelithiasis, resulting in a laparoscopic cholecystectomy in June 2016; reports document the claimant's ongoing treatment for gastroesophageal reflux (GERD) as well as her history of a right ankle fracture. Additional supportive evidence is found in primary care reports from 2016 (Exhibit 8F), which document a body mass index in excess of 30 (consistent with obesity) as well as treatment for GERD. Reports indicate that prior to her cholecystectomy the

14

claimant reported 8/10 pain, but a June 2016 report indicates she was pain-free, with no pain or tenderness in the abdomen and with normal motion of the extremities, with no swelling or pain noted. The claimant's provider noted that the claimant was able to work a 40-hour work week "with accommodations for mental health three times per week"; this statement is not given great weight as it does not provide a function by function assessment, and it appears to comment on an issue that is reserved for the Commissioner; however, it is suggestive of the claimant's ability to maintain a full time work schedule despite her impairments.

[Dr. Toor's consultative] report from August 2016 (Exhibit 10F) documents a moderately pained appearance, limited lumbar motion, a positive straight leg raise, a 20% squat, leg tenderness, and difficulty rising from a seated position, which are findings that are not typically present in other medical reports; therefore only some amount of weight is granted to the opinion of the examiner, whose indicated that the claimant had moderate to marked limitations for bending and lifting and moderate limitations for standing, walking, and sitting for long periods, and interruptions to her routine due to abdominal pain. It is noted that the consultative examiner's report, in contrast to the opinion, contains negative lumbar imaging, as well as findings and observations that include full and painless motion of all upper and lower extremity joints, and full strength in all muscle groups, with no sensory deficit or reflex abnormality; the report also indicates that the claimant was capable of cooking, cleaning, shopping, and performing self-care and grooming.

Thereafter, medical reports from providers indicate that the claimant is treated conservatively for her physical impairments and such treatment has provided adequate control of her symptoms. For example, reports from 2016 and 2017 document a diagnosis of tension headaches (Exhibits 8F, 16F); while the claimant reported persistent headaches at a June 2017 visit (Exhibit 16F), the claimant was not in acute distress and she reported that she was pain-free, and no medication was provided for headaches. The claimant reported left knee pain at a September 2017 primary care visit (Exhibit 16F), but she had full range of motion and only mild left knee tenderness and crepitus. Thereafter, reports document occasional complaints of knee pain and headaches, treated conservatively with medication and use of ice packs, and ultimately Topamax was prescribed

for headaches in 2019 (Exhibit 16F); an August 2019 visit (Exhibit 16F) documents epigastric tenderness but with no guarding, and the report indicates that the claimant was provided with refills on her medication. Subsequent reports through 2023 (Exhibits 21F, 23F) indicate that the claimant [was seen] for routine physicals, medication refills, and for the completion of DSS paperwork; reports typically document a normal gait, normal range of motion, no tenderness, and negative straight leg raise. As previously indicated, the undersigned has considered all of the claimant's impairments, including those that are not severe, and has considered the claimant's subjective complaints in a manner that is most favorable to the claimant; the overwhelming majority of evidence is supportive of the claimant's ability to perform a somewhat reduced range of medium work as defined in her residual functional capacity.

***

An assessment submitted by Christine Humbert, a physician's assistant (Exhibit 24F) dated October 6, 2023, is given little weight in assessing the claimant's functioning as the limitations set forth by this source are not supported by the substantial weight of evidence, which includes findings and observations made by this source and other providers who regularly treat the claimant. Ms. Humbert acknowledged that her first contact with the claimant on April 7, 2021, and lists symptoms, findings, and observations that include wheezing, an antalgic gait, intermittent sharp leg pain, persistent anxiety, emotional lability, an inappropriate/blunt/flat affect, depression, panic attacks, poor relationships, and sleep disturbance. Ms. Humbert indicated that the claimant's limitations included breathing problems when exposed to extreme cold and other environmental irritants, occasional impairment related interference with attention and concentration (defined as from 6% up to 33% of the time), an ability to walk for only one block without rest or severe pain, an ability to stand for only twenty minutes at one time and to stand/walk for less than two of eight hours, a need to alternate positions at will, a need to take unscheduled breaks during the day, a need to elevate her legs greater than 20% of the workday, Humbert further indicated that the claimant would experience psychologically based symptoms that would interfere with the ability to handle stress and with the performance of tasks at a consistent pace for more than 20% of the workday; finally, Ms. Humbert indicated that the claimant would experience between 11% and 20% interference in an eight-hour day in areas that include responding appropriately to changes in routine, travelling to

16

unfamiliar places or to use public transportation, and to be aware of normal hazards and to take appropriate cautions.

However, at a May 2021 visit, Ms. Humbert noted that the claimant was cooperative, in no acute distress, made good eye contact, was alert and fully oriented, had normal findings of the chest and lungs, and ambulated with a normal gait (Exhibit 21F). The next visit in December 2021 (Exhibit 21F) was a telehealth visit for the purpose of completing DSS paperwork and does not contain physical or psychiatric findings. The claimant's next visit was conducted by the claimant's physician, and the report documents an appropriate mood and affect, full orientation, no anxiety, a cooperative attitude, and normal musculoskeletal findings (Exhibit 21F). Subsequent visits to an OBGYN during 2022 (Exhibit 21F) document an absence of pain, an appropriate mood and affect, good eye contact, and an alert mental state. A return visit to Ms. Humbert in September 2022 (Exhibit 21F) indicates a normal gait, normal range of motion, full muscle strength, an appropriate mood and affect, no anxiety/agitation, full orientation, and an alert mental state. An April 2023 visit to another physician's assistant (Exhibit 23F) documents full orientation, good eye contact, good cooperation and an alert mental state, no difficulty ambulating, and a normal neurologic exam. Finally, Ms. Humbert's findings and observations at a June 2023 examination (Exhibit 23F) document patellar grind test was positive bilaterally; otherwise, the report documents an appropriate mood and affect, alertness and full orientation, no anxiety/agitation, normal findings of the chest and lungs, a normal gait, normal strength, normal reflexes, and normal muscle tone. Accordingly, the limitations set forth by Ms. Humbert are not well supported by substantive clinical and diagnostic findings.

Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by the complete record, which documents conservative treatment for the claimant's physical and mental impairments, which have been generally stable; the record indicates that the claimant retains the capacity to adequately perform basic physical and mental tasks in an adequate manner on a regular basis.

Tr. 1153-1157 (underlining added to emphasize the ALJ's reasoning in making the RFC

17

finding).   The ALJ's decision denying Plaintiff's application became the Commissioner's final decision.

Plaintiff subsequently returned to federal court and filed the subject action, maintaining primarily that the ALJ's decision again fails to adequately explain how Plaintiff can perform the physical demands of medium work.   Plaintiff maintains that the ALJ's second, most-recent, explanation of the RFC finding did not really improve on her first one, since, although the ALJ provided a more-detailed summary of the evidence this time, she still "failed to tie any of the evidence" to an ability to perform work at the medium exertional level. ECF No. 7-1 at p. 18.   Plaintiff alleges that "once again," the ALJ "failed to give any reasoned analysis" of "how the evidence supports the exertional demands of medium work." *Id*.   In particular, Plaintiff, primarily citing district court decisions for support, contends that an ALJ must provide an explanation for how evidence supports the RFC finding that goes beyond *merely summarizing* the supporting evidence. *Id*. Additionally, Plaintiff maintains that the ALJ violated Social Security Ruling ("SSR") 96-8p by failing to make a function-by-function analysis of Plaintiff's ability to perform the functions required of medium work.   Plaintiff further contends that the ALJ improperly rejected the only two medical opinions assessing Plaintiff's physical abilities during the relevant period, referring to the opinions of Toor and Humbert, by finding that each of them was inconsistent with the record as a whole, but without considering whether the opinions were consistent with each other.   Finally, Plaintiff asserts that after improperly rejecting the opinions of Toor and Humbert, the ALJ necessarily and improperly relied on her own lay opinion of the medical evidence to make the physical RFC finding.

18

Plaintiff contends that the ALJ's alleged errors were "particularly harmful," since, if Plaintiff were found able to perform less than medium work, she would be deemed disabled by application of the grids:

> This error is particularly harmful because Plaintiff was in the category of closely approaching advanced age at the time of the decision, she had no past relevant work, and she is not literate. . . . At Plaintiff's age and with her attendant characteristics, if illiterate, she would be disabled per the Medical-Vocational Guidelines ("grids") if reduced to a light exertional RFC level. . . . Even if not illiterate, the grids render Plaintiff disabled at a sedentary exertional level[.]

Pl. Memo of Law, ECF No. 7-1 at p. 19 (citation omitted).

Plaintiff further maintains that the ALJ erred concerning the mental aspects of the RFC finding, by failing to properly evaluate the effect her stress would have on her ability to work:

> The ALJ also made significant errors assessing Plaintiff's mental RFC, failing to explain how he determined that Plaintiff's individualized stress would lead to the generic limitations in the RFC, which included no off-task limitations and no social limitations whatsoever, despite opinion evidence that such limitations were clearly warranted.

Pl. Memo of Law, ECF No. 7-1 at pp. 15-16. Plaintiff also asserts that the ALJ erred when weighing the mental opinion evidence, by failing to consider the consistency between the consultative opinion of Dr. Lin and the opinion of PA Humbert, each of which indicated that Plaintiff had at least a moderate limitation dealing with stress. *Id*. at 24.

The Commissioner disagrees with those arguments, and maintains that, "the ALJ's decision, as a whole, reasonably explained why the ALJ found Plaintiff was able to perform medium work." ECF No. 11-1 at p. 7. The Commissioner further indicates that

19

the RFC finding is supported by substantial evidence, and that Plaintiff has not shown that she is more physically limited than what the ALJ found. *See, id*. ("Substantial evidence supported the RFC for medium work, and Plaintiff is unable to show that she was more limited than found by the ALJ.").

The Court has carefully considered the parties' submissions and the relevant portions of the record and finds, for the reasons discussed below, that remand to the Commissioner is required for further administrative proceedings.

## DISCUSSION

Issue 1: Whether the ALJ properly explained how the RFC finding
for medium work is supported by the record evidence?

As an initial matter, the Court notes that some of Plaintiff's arguments should not have been made to the Court, since they are factually incorrect.   Specifically, the Court is referring to Plaintiff's assertion that the ALJ's decision never mentions fibromyalgia, and her contention that the ALJ improperly rejected the fibromyalgia diagnosis, as well as PA Humbert's opinion, due to a lack of objective evidence concerning fibromyalgia.   In fact, though, the ALJ expressly mentioned the fibromyalgia diagnosis at step two of the sequential evaluation, and found that it was not severe, not because of a lack of objective findings, but because "subsequent reports [did] not indicate that fibromyalgia was one of the claimant's treating diagnoses, and no additional treatment was provided for [that] condition." Tr. 1150.T[7]   Neither did the ALJ reject Humbert's opinion due to a lack of

---

[7] As the ALJ noted, an impairment is "severe" within the meaning of the regulations only if "it significantly limits an individual's ability to perform basic work activities." Tr. 1148.   Plaintiff has not challenged the ALJ's step-two finding.

20

objective evidence concerning fibromyalgia. Tr. 1157.[8]

Nor does the Court agree with Plaintiff's contention that the ALJ erred in her evaluation of the opinions from Toor and Humbert.   The ALJ essentially found that those opinions were entitled to little weight insofar as they assessed physical limitations, since they were inconsistent with "the overwhelming majority of the evidence." Tr. 1155. The Court, having reviewed the record, including, for example, Exhibit 21F, finds that the ALJ's determination, that Plaintiff's treatment records typically contained normal findings and were inconsistent with Plaintiff's subjective complaints, is clearly supported by substantial evidence.   The Court agrees that the observations of Plaintiff reported in the assessments by Toor and Humbert are not consistent with those typically made by Plaintiff's treatment providers.   Consequently, the Court finds that any error by the ALJ in failing to expressly discuss how consistent the two opinions were *with each other* is harmless, since it presumably would not have made any difference to the ALJ's determination on that point.

However, the Court otherwise generally agrees with Plaintiff that the ALJ's decision fails to cure the error previously identified by Judge Carter.   In particular, the Court agrees with Judge Carter's observation that "[t]he ALJ's otherwise thoroughly written decision fails to provide sufficient analysis . . . connecting the record evidence to her RFC determination for medium work." Tr. 1227.

---

[8] In explaining the weight given to Humbert's opinion, the ALJ did not mention fibromyalgia.   Rather, the ALJ indicated that Humbert's opinion was entitled to only little weight since the limitations contained therein were "not supported by the substantial weight of the evidence," including Humbert's own findings,Tr. 1156, and were "not well supported by substantive clinical and diagnostic findings." Tr. 1157.

21

It is of course frequently stated by district courts in this Circuit that an ALJ's duty to explain his RFC finding consists of an "obligation to construct an accurate and logical bridge between his recitation of the facts and the conclusions he reached":

> Courts in this Circuit have indicated that ALJs must not only identify supporting evidence, they also must build an accurate and logical bridge from that evidence to the conclusion.   In sum, while ALJs are not required to reconcile every conflicting shred of medical testimony, they must discuss the evidence and factors crucial to the disability determination with sufficient specificity to enable this Court to decide whether the determination is supported by substantial evidence.

*Orlando Christopher D. v. Commissioner*, No. 1:24-CV-01526 (PJE), 2026 WL 494026, at *8 (N.D.N.Y. Feb. 23, 2026) (citations and internal quotation marks omitted); *see also, Terrence S. B. v. Comm'r of Soc. Sec.*, No. 1:22-CV-0380 (JJM), 2024 WL 4131237, at *5 (W.D.N.Y. Sept. 10, 2024) ("ALJ Bell's explanation was sufficiently specific to satisfy his obligation 'to construct an accurate and logical bridge between his recitation of the facts and the conclusions he reached.'") (citation omitted).

However, it is also well-settled that "this principle supplies *a basis for remand* only when the link between evidence and conclusion is so opaque as to frustrate review." *Lisette R. o/b/o C.J.O. v. Kijakazi*, No. 3:22-CV-00784-TOF, 2023 WL 6357961, at *6 (D. Conn. Sept. 29, 2023) (emphasis added).   In this regard, to be sufficient, the ALJ's explanation need only allow the Court to understand the ALJ's reasoning, and be supported by substantial evidence. *See, Lisette R. o/b/o C.J.O. v. Kijakazi*, No. 3:22-CV-00784-TOF, 2023 WL 6357961, at *4 (D. Conn. Sept. 29, 2023) ("[The ALJ's] discussion, while not lengthy, is nonetheless sufficient to permit the Court to understand his

22

reasoning: he thought that the data in the school records suggesting a marked limitation were outweighed by other data suggesting a lower level of limitation."); *see also, Tami B. v. Comm'r of Soc. Sec.*, No. 3:21-CV-01460 (JCH), 2023 WL 2403898, at *8 (D. Conn. Mar. 7, 2023) ("[A] district court must remand where the ALJ's decision was not thoroughly explained in a manner that allows the court to be comfortable that it was supported by substantial evidence.").

Here, in deciding that Plaintiff could perform a reduced range of medium work, the ALJ did not cite evidence affirmatively indicating that Plaintiff could lift a precise amount of weight or that she could sit, stand, or walk for a specific length of time.   Rather, the ALJ made the RFC finding based on inferences drawn from evidence that Plaintiff had essentially normal physical functioning.

In that regard, the ALJ acknowledged that Plaintiff claimed to have difficulty standing and walking, due to pain, including pain from her "stomach," knee, and ankle. Tr. 1150, 1153.[9]   However, the ALJ found that such complaints were inconsistent with the record, which generally reported normal examination findings.   For example, the ALJ stated that Plaintiff's complaints of knee pain were inconsistent with the record as a whole, which indicated that, while Plaintiff had "occasional knee tenderness," she typically exhibited "a normal gait, full lower extremity joint motion, and no weakness." Tr. 1150. Further, the ALJ noted the lack of any evidence that Plaintiff had "*any limitation* in the ability to use her upper extremities for fine and gross motor movements." Tr. 1151

---

[9]  To the extent Plaintiff also claimed to have pain due to fibromyalgia, the ALJ found that such condition was not severe, and Plaintiff has not challenged that finding.

23

(emphasis added).    And, to the extent that there was conflicting evidence concerning Plaintiff's physical RFC, the ALJ found, in almost every instance, that the evidence of limitations was unpersuasive to varying degrees inasmuch as it was inconsistent with the evidence as a whole. *See, e.g.,* Tr. 1156 ("An assessment by Christine Humbert, a physician's assistant, dated October 6, 2023, is given little weight in assessing the claimant's functioning as the limitations set forth by this source are not supported by the substantial weight of evidence, which includes findings and observations made by this source and other providers who regularly treat the claimant.").

However, the Court cannot find that the evidence upon which the ALJ relied in making her physical RFC finding, consisting of the aforementioned typically-normal physical exams, along with evidence of conservative treatment, Plaintiff's performance of various non-strenuous activities of daily living, and some unreported work activity by Plaintiff decorating cakes and selling crafts, necessarily supports an RFC finding for medium work.    This is particularly so since the ALJ made this finding without the support of any medical opinion (or other evidence, such as evidence of past work) specifically indicating that Plaintiff could perform the physical demands of medium work, and without providing a function-by-function explanation for how the evidence the ALJ relied on indicated that Plaintiff could meet those demands.

On this point, the relevant legal principles were set forth by another district court in this circuit as follows:

> The RFC is an assessment of "the most [a claimant] can still do despite [his] limitations," 20 C.F.R. § 416.945(a)(1). An RFC is determined based on "all the relevant evidence" in the record. *Id.* "In deciding a disability claim, an

24

ALJ is tasked with 'weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.'" *Benman v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d 252, 256-57 (W.D.N.Y. 2018) (alterations in original) (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)). "The social security ALJ, unlike a judge in a trial, must on behalf of all claimants affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018) (internal quotation marks and alterations omitted). Thus, where the record does not contain relevant medical opinion evidence, an ALJ has an "affirmative duty to request RFC assessments from a plaintiff's treating sources." *Felder v. Astrue*, No. 10CV5747 (DLI), 2012 WL 3993594, at *11 (E.D.N.Y. Sept. 11, 2012). "[I]n the absence of a competent medical opinion, an A.L.J. is generally not qualified to assess a claimant's RFC on the basis of bare medical findings.... Thus, even though the Commissioner is empowered to make the RFC determination, where the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities, the general rule is that the Commissioner may not make the connection himself." *Keith v. Berryhill*, No. 1:17CV669(JJM), 2019 WL 2135482, at *3 (W.D.N.Y. May 16, 2019) (internal quotations and citations omitted). "It is error for an A.L.J. to make an RFC determination without opinions from medical professionals concerning the impact of the objective medical evidence on a plaintiff's RFC." *Barnhardt v. Saul*, No. 18-CV-6632, 2020 WL 1330704, at *2 (W.D.N.Y. Mar. 23, 2020). *See Brook v. Kijakazi*, No. 20CV7750, 2022 WL 213994, at *17 (S.D.N.Y. Jan. 25, 2022) ("Courts in this Circuit have held that when an ALJ has to determine an RFC, her failure to request a functional assessment when no such assessment exists in the record or when any such assessments are insufficient constitutes a failure of her duty to develop the record.").

An ALJ's failure to request RFC assessments may be harmless, and thus no remand warranted, in cases where "the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013). For example, remand is not warranted when "the ALJ ha[s] [a] number of functional assessments from consultative examiners and some form of functional assessment from a treating source" even if there is no formal RFC assessment in the record. *Staggers v. Colvin*, No.

25

3:14CV717(JCH), 2015 WL 4751123, at *3 (D. Conn. Aug. 11, 2015). Similarly, remand may not be necessary where the ALJ rejects the medical opinion evidence in the record, but the RFC formulation is supported by substantial evidence of functional capacity in "contemporaneous treatment notes." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8-9 (2d Cir. 2017). So, while "it is not *per se* error for an ALJ to make a disability determination without having sought the opinion of the claimant's treating physician, a decision not to remand assumes that there are no obvious gaps in the record precluding the ALJ from properly assessing the claimant's residual functional capacity." *Downes v. Colvin*, No. 14-CV-7147(JLC), 2015 WL 4481088, at *15 (S.D.N.Y. July 22, 2015) (internal quotation marks and citation omitted). In short, "courts have upheld an ALJ's RFC finding only where the record is clear and, typically, where there is some useful assessment of the claimant's limitations from a medical source." *Staggers*, 2015 WL 4751123, at *3.

*Danny B. v. Kijakazi*, No. 3:21CV178 (MPS), 2022 WL 354549, at *2 (D. Conn. Feb. 7, 2022) ("*Danny B. v. Kijakazi*").

In *Danny B. v. Kijakazi*, where the ALJ's RFC finding was not based on a medical opinion, the court went on to find that the error was not harmless, since the ALJ was not entitled to conclude, merely based on normal physical exam results and routine activities of daily living, that the claimant was capable of performing medium work activity:

> The ALJ's determination that Plaintiff retained the residual functional capacity to frequently lift or carry objects weighing up to 25 pounds, and to lift objects up to 50 pounds is not supported by any functional assessment or opinion by a medical source. . . . There is no medical opinion undergirding the ALJ's determination of the physical portion of Plaintiff's RFC, in particular, the assessment that the Plaintiff could perform "medium work." Instead, all the medical evidence that ALJ had before him were treatment notes and raw data.
>
> ***
>
> The Commissioner asserts that a medical opinion is not required because substantial evidence in the record supports the RFC determination. I disagree.

26

\*\*\*

The Commissioner . . . points to the Plaintiff's activities of daily living as substantial evidence supporting the RFC. The Commissioner argues that the Plaintiff "told the ALJ that he drove, helped out with yard work when he could, carried light groceries into the house, visited his girlfriend's house three times per week, visited his cousins' homes, watched movies and television and read the paper."  But none of these activities speak to any functional limitations caused by Plaintiff's spinal impairments, much less demonstrate his capacity to perform the lifting requirements of medium work.

The Commissioner also maintains that the medical evidence supports the RFC. Specifically, the Commissioner argues that record reflects "largely normal physical examination findings" and that the Plaintiff "exhibited tenderness on only two occasions" and limited strength and range of motion once during a physical therapy session in December 2019. ECF No. 17-1 at 8. The Commissioner emphasizes that Plaintiff's pain was treated with "conservative treatment" and that he "did not undergo injections or surgery." ECF No. 17-1 at 7-8.

Although the Commissioner correctly notes that the record contains some findings of normal range of motion and muscle tone and negative straight leg raising, see e.g. R. 632 (medical note dated October 11, 2019 stating "musculoskeletal: normal range of motion"), these findings are insufficient to support the ALJ's determination that the Plaintiff could meet the lifting requirements of medium work. *See Kurlan v. Berryhill*, No. 3:18CV62(MPS), 2019 WL 978817, at \*4 (D. Conn. Feb. 28, 2019) (finding that phraseology such as "full motor strength" and "normal gait" does not "necessarily equate to intact functional abilities of the specific nature detailed in the RFC formulation—at least not without a supporting medical opinion that says so") (internal quotation marks and ellipses omitted).

\*\*\*

In sum, none of these medical records support the RFC finding of medium work; indeed, none contains a functional assessment of the Plaintiff's physical abilities. *Guillen v. Berryhill*, 697 F. App'x 107, 108-09 (2d Cir. 2017) (remanding, among other things, for the Commissioner to "request a medical source statement from [the claimant's] treating physician including an assessment of [the claimant's] limitations vis-à-vis her ability to work"

27

and noting that "[u]nlike *Tankisi,* the medical records obtained by the ALJ do not shed any light on [the claimant's] residual functional capacity").

Because neither the Plaintiff's work history, activities of daily living, or medical records illuminate his functional capabilities, they do not constitute "sufficient evidence" in support of the ALJ's RFC determination. *Tankisi,* 521 F. App'x at 34. Remand is therefore warranted. *See Kurlan v. Berryhill*, No. 3:18CV62(MPS), 2019 WL 978817, at *4 (D. Conn. Feb. 28, 2019) (finding that plaintiff's medical records, hearing testimony, and activities of daily living did not provide substantial evidence in support of RFC determination where the ALJ rejected medical opinions in the record); *see also Borrero v. Saul*, No. 3:19CV1306(TOF), 2020 WL 7021675, at *10-11 (D. Conn. Nov. 30, 2020) (remanding for further development of the record where no medical opinion supported the RFC and the medical records and Plaintiff's activities of daily living fail to provide support for the RFC).

On remand, the ALJ "should develop the record as necessary to obtain opinions as to the Plaintiff's functional limitations from [his] treating and/or examining sources, obtain a consultative physical examination and/or a medical expert review, and/or obtain a functional capacity evaluation, and thoroughly explain his findings in accordance with the regulations." *Dowling v. Saul*, No. 3:19CV01170 (WIG), 2020 WL 2079113, at *7 (D. Conn. Apr. 30, 2020).

*Danny B. v. Kijakazi*, 2022 WL 354549, at *3-4.

The Court is aware of contrary decisions, in which courts have held that evidence of normal physical exam findings, such as what the ALJ highlighted here when explaining her RFC finding, can provide substantial evidence to support an RFC finding for medium work. *See, e.g., Smith v. Comm'r of Soc. Sec.*, No. 20 CIV. 08547 (JCM), 2022 WL 421136, at *13 (S.D.N.Y. Feb. 11, 2022) ("An ALJ may properly conclude that a Plaintiff is capable of medium level work based on the record's consistent normal findings, even where the consultative examiner does not specifically address the Plaintiff's ability to lift

28

and carry. *See Heitz v. Comm'r of Soc. Sec.*, 201 F. Supp. 3d 413, 425 (S.D.N.Y. 2016) (concluding that the ALJ properly found an RFC for medium work even though the consultative examiner "did not make specific conclusions regarding the extent of [Plaintiff's] lifting or carrying limitations" because "his examination and findings as a whole imply that only minimal such limitations exist.*")*[.]   Here, that record suggests largely normal findings rather than a limitation on Plaintiff's ability to lift and carry. Accordingly, substantial evidence supports the ALJ's conclusion that Plaintiff was capable of an RFC that involved a medium level of physical exertion.") (citations omitted); *see also, Mandato v. Comm'r of Soc. Sec.*, No. 1:22-CV-04000, 2023 WL 6237683, at *10 (S.D.N.Y. Sept. 26, 2023) ("Ms. Mandato asserts that there is no medical or other evidence in the record that shows she can sit for six hours per workday even while changing positions every half hour, or that she would be off task for 5% of an eight-hour workday. However, based on the medical record's consistent findings that Plaintiff is *not restricted* from certain activities, an ALJ may properly conclude that a Plaintiff *is capable* of particular types of work.") (emphasis added, citation and footnote omitted); *Rojas v. Comm'r of Soc. Sec.*, No. 15-CV-1080 (RRM), 2017 WL 943931, at *8 (E.D.N.Y. Mar. 9, 2017) ("Here, substantial evidence supports the ALJ's physical RFC finding that Rojas could perform a range of medium work despite having a hiatal hernia, diverticulosis, and gastritis. For example, her physical examinations at Jamaica Hospital consistently yielded normal findings.").

However, the Court finds the reasoning in *Danny B. v. Kijakazi* more persuasive, particularly since the ALJ here, in addition to making her RFC finding without the benefit

29

of any supporting medical opinion, also failed to provide function-by-function findings as required by SSR 96-8p. That is, the ALJ failed to explain, on a function-by-function basis, *how* the normal physical exam results and other evidence she cited support Plaintiff's ability to perform particular work functions at the medium exertional level. The general legal principles relevant to this point have been stated as follows:

> Before determining a claimant's RFC based on exertional levels (sedentary, light, medium, heavy, or very heavy), the ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (emphasis added) (internal quotation marks omitted); see also 20 C.F.R. §§ 404.1545, 416.945.
>
> The work-related functions include physical abilities (standing, sitting, walking, lifting, carrying, pushing, pulling), mental abilities (understanding, remembering, carrying out instructions, and responding to supervision), and other abilities that may be impacted by impairments (seeing, hearing, ability to tolerate environmental factors). *See* SSR 96-8P; *see also* 20 C.F.R. § 404.1545(b)-(d); id. § 416.945; *Cichocki*, 729 F.3d at 176.
>
> Although the Second Circuit has not applied a *per se* rule requiring remand in cases where ALJ did not provide an explicit function-by-function analysis—*see Cichocki*, 729 F.3d at 176; *compare Burrows v. Barnhart*, No. 3:03CV342, 2007 WL 708627, at *13 (D. Conn. Feb. 20, 2007)("[a]lthough a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce [ ] a detailed statement in writing"), with *McMullen v. Astrue*, No. 5:05-cv-1484, 2008 WL 3884359, at *6 (N.D.N.Y. Aug. 18, 2008) (remanding because "the ALJ erred in determining that Plaintiff could do light work before fully assessing his work-related abilities on a function-by-function basis")—"remand [however] may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Cichocki*, 729 F.3d at 177.

*Lennett E. v. Comm'r of Soc. Sec.*, No. 1:24-CV-01831-GRJ, 2024 WL 4880077, at \*5 (S.D.N.Y. Nov. 25, 2024).

In the instant case, which involves contradictory evidence concerning Plaintiff's abilities, the Court finds that the ALJ's failure to assess Plaintiff's work-related abilities on a function-by-function basis frustrates the Court's review, since the evidence upon which the ALJ relied, consisting mainly of normal physical exam results, does not necessarily establish Plaintiff's ability to perform medium work.   In a similar situation, another court stated:

> The ALJ points to physical exams where Newton exhibited normal gait with full range of motion, but the Court fails to see how these findings support an inference that Newton can perform medium work, that is, lift no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds and stand or walk 6 hours in an 8-hour day.  . . .  Even if the clinical findings on exam contradict Newton's statements about his symptoms and functional abilities, the ALJ's decision failed to support his conclusion that Newton can perform medium work. "<u>Discounting a claimant's statements about the limiting effects of their symptoms is not equivalent to demonstrating by medical evidence that a claimant has the RFC to perform certain work-related activities</u>." *Engle v. O'Malley*, No. 1:23-CV-69 JAR, 2024 WL 3936072, at \*5 (E.D. Mo. Aug. 26, 2024) (finding "the ALJ failed to translate the clinical findings she discussed into Engle's functional limitations" and failed to support her RFC determination of medium work with additional restrictions); *see also Pleimann v. O'Malley*, No. 4:23-CV-130 RLW, 2024 WL 1283312, at \*11 (E.D. Mo. Mar. 26, 2024) ("Plaintiff did not claim that he could not do light or sedentary work, or no work at all. Rather, Plaintiff claims that he cannot perform medium work… that he has more restrictive lifting restrictions than occasionally lifting 50 pounds and frequently lifting 25 pounds, in addition to postural limitations, such as no twisting or crouching.").
>
> An ALJ's RFC assessment must discuss and describe how the evidence supports each conclusion, and must cite specific medical facts and

nonmedical evidence in doing so, as well as resolve any material inconsistencies or ambiguities in the evidence of record. SSR 96-8p, 1996 WL 374184, at *7. The ALJ did not undergo this process here. In other words, although he thoroughly summarized the medical evidence of record, the ALJ did not justify how he translated his understanding of the medical evidence into a conclusion that Plaintiff could engage in medium work.

*Newton v. Dudek*, No. 4:23-CV-1382-RHH, 2025 WL 901262, at *8 (E.D. Mo. Mar. 25, 2025) (underlining added); *but see*, *Justina V.P. v. Comm'r of Soc. Sec.*, No. 1:24-CV-03744-AT-GRJ, 2024 WL 5345204, at *4 (S.D.N.Y. Dec. 30, 2024)("Although the ALJ here did not provide an explicit function-by-function assessment, the Court concludes that a remand is not warranted. Here's why. The ALJ's assessment of Plaintiff's physical capacity to meet the demands of basic work activity is supported by a reasonable reading of the record, which included consistent physical examination findings of normal gait, normal range of motion, and normal strength."), *report and recommendation adopted sub nom. Perez v. O'Malley*, No. 24 CIV. 3744 (AT) (GRJ), 2025 WL 252952 (S.D.N.Y. Jan. 21, 2025).

The Court agrees with the reasoning in *Newton v. Dudek*, which is essentially the same reasoning applied by Judge Carter when he remanded this case the first time. Here, too, as in *Newton v. Dudek*, even if the ALJ properly found that Plaintiff's subjective complaints were not credible and that the reports from Toor and Humbert were unpersuasive, she has not provided an explanation for how she further found that Plaintiff can meet the demands of medium work, as opposed to light or sedentary work. The evidence upon which the ALJ relied in this case, involving normal physical exam findings, conservative treatment, and performance of routine daily activities, does not support a

logical inference that Plaintiff is capable of performing medium work.

The ALJ hasn't cited any evidence of Plaintiff ever actually performing activities at the medium level of exertion, nor has she offered a principled reason for concluding that the evidence supports a finding of medium work, as opposed to light or sedentary work. The ALJ has likely shown that Plaintiff is capable of some level of work, but there must be a reason for choosing medium work.  The difference between medium and light or sedentary is significant here, due to Plaintiff's age, work experience, and education level, which, under the grids, could direct a finding of disabled.

In sum, the Court finds that remand is required, since the ALJ erred by making her physical RFC without any supporting medical opinion, and without either making the function-by-function findings required by SSR 96-8p or citing evidence that otherwise clearly establishes Plaintiff's ability to perform the various functions of medium work. Moreover, the error is potentially quite harmful, since Plaintiff could be found disabled by application of the grids even if she retains the ability to perform light and/or sedentary work.

On remand, the ALJ should develop the record as necessary to obtain opinions as to the Plaintiff's functional limitations from her treating and/or examining sources; obtain a consultative physical examination, medical expert review, and/or functional capacity evaluation; and thoroughly explain her findings in accordance with the regulations. Insofar as it is relevant to the grids, the ALJ should also indicate whether or not she finds that Plaintiff is illiterate, as Plaintiff claims.

Issue 2: Whether the ALJ erred when making her mental RFC finding,
by failing to account for Plaintiff's stress by including additional limitations
for time off-task and social interaction?

In her decision, the ALJ found that Plaintiff had severe impairments including depressive disorder and anxiety disorder, which did not meet or equal the severity of a listed impairment. Tr. 1150.   In that regard, when applying the paragraph B criteria, the ALJ found that Plaintiff had a moderate limitation in understanding, remembering, and applying information; a mild limitation in interacting with others; a moderate limitation in concentrating, persisting, and maintaining pace; and a moderate limitation in adapting or managing herself. Tr. 1152.   Regarding that last finding, the ALJ commented that, "consultative examiners have indicated that the claimant has a moderate limitation in her ability to appropriately manage stress." Tr. 1152.   Plaintiff has not challenged the ALJ's step-three finding.

Later in the decision, in her RFC finding, the ALJ purported to account for Plaintiff's mental impairments by indicating that,

> she is able to understand, remember, and apply simple instructions and
> directions; she is not able to understand, remember, and apply
> detailed/complex instructions; she is able to perform simple routine tasks,
> and is able to occasionally manage change to the workplace environment
> and/or tasks.

Tr. 1153.   When explaining that finding, the ALJ indicated that she gave great weight to the opinion of consultative examiner Yu-ying Lin, Ph.D. ("Lin"), which, in pertinent part, stated that Plaintiff had no limitation in understanding or following simple instructions, performing simple tasks independently, or maintaining a schedule; a mild limitation for

34

maintaining attention concentration; and a "moderate limitation for handling stress." Tr. 1156.   On the other hand, the ALJ gave little weight to the presumably-work-preclusive opinion of PA Humbert, that Plaintiff "would experience psychologically-based symptoms that would interfere with the ability to handle stress and with the performance of tasks at a consistent pace for more than 20% of the workday," finding that such opinion was "not supported by the substantial weight of evidence" and "not well supported by substantive clinical and diagnostic findings." Tr. 1156-1157.

Plaintiff, though, contends the ALJ's mental RFC finding is erroneous, since the ALJ failed to adequately account for the effects of her stress.   In particular, Plaintiff asserts that the ALJ failed to conduct an individualized analysis of her stress as required by SSR 85-15.   Plaintiff also maintains that it was not sufficient for the ALJ to account for her stress merely by limiting her to simple work, and that the RFC finding should have included limitations related to being off-task and having difficulty with social interaction. Plaintiff further contends that the ALJ erred, when weighing the mental-health opinion evidence, by failing to consider the consistency between the consultative opinions of Lin and Humbert, since each indicated that Plaintiff had at least a moderate limitation dealing with stress.

However, the Court disagrees.   As a preliminary matter, the Court finds no merit to Plaintiff's argument concerning the ALJ's failure to consider the alleged consistency between the opinions of Lin and Humbert when weighing the opinions.   According to Plaintiff, the opinions were "consistent" since both indicated that Plaintiff would have "at least moderate" limitations from stress.   Plaintiff seems to contend that since the two

35

opinions were consistent, and since the ALJ gave great weight to Lin's opinion, the ALJ should have also adopted the additional limitations contained in Humbert's report. However, the Court disagrees with Plaintiff's assertion, that the opinions are particularly consistent with each other merely because both indicate that Plaintiff would have some degree of limitation from stress, given the significant variance between the two opinions concerning the extent of such limitation.   For example, Lin merely indicates that Plaintiff would have a moderate limitation from stress, while Humbert opines that Plaintiff would be "precluded" from "deal[ing] with normal work stress" more than 20% of the time. Tr. 1890.   In any event, the ALJ implicitly found that the two opinions were inconsistent with each other, since she found that Lin's opinion was generally consistent with the overall record, while Humbert's far-more-restrictive opinion was not, and, indeed, that Humbert's opinion was not even consistent with Humbert's own findings and observations. Tr. 1156.

Additionally, insofar as Plaintiff's argument is based on the ALJ's alleged failure to follow SSR 85-15, it lacks merit since that ruling does not apply to cases such as this where a claimant has both exertional and non-exertional impairments. *See, e.g., Reyes v. Comm'r of Soc. Sec.*, No. 21 CIV. 372 (AEK), 2022 WL 4482543, at *19 (S.D.N.Y. Sept. 27, 2022) ("It is well-established, however, that SSR 85-15—"descriptively titled 'The Medical–Vocational Rules as a Framework for Evaluating *Solely* Nonexertional Impairments,' does not apply to a case, such as this one, in which the claimant suffers from a combination of exertional and non-exertional impairments." *Roma v. Astrue*, 468 F. App'x 16, 20 (2d Cir. 2012) (emphasis in original) (summary order); *see also Acevedo v. Saul*, 577 F. Sup. 3d 237, 252 (S.D.N.Y. 2021) ("Courts within the Second Circuit have

36

consistently held that SSR 85-15 does not apply to claimants who suffer from both exertional and non-exertional impairments."); *Yarington v. Colvin*, No. 13-cv-16S, 2014 WL 1219315, at \*5 (W.D.N.Y. Mar. 24, 2015) ("SSR 85-15 does not even apply to a case like this, where the claimant suffers from a combination of exertional and non-exertional limitations").") (emphasis in original).

Further, insofar as Plaintiff contends that limiting Plaintiff to simple routine tasks and only occasional changes in the work environment was insufficient as a matter of law to account for Plaintiff's moderate limitation in appropriately managing stress, the Court also disagrees. *See, e.g., Christina G. v. Comm'r of Soc. Sec.*, No. 1:22-CV-00173 (JGW), 2025 WL 1371425, at \*4 (W.D.N.Y. May 12, 2025) ("Contrary to Plaintiff's argument, caselaw within this circuit reflects that an ALJ can properly account for these types of [moderate] mental limitations by restricting a plaintiff to simple, unskilled, routine, and repetitive work.") (collecting cases).

Finally, Plaintiff's contention that the ALJ improperly failed to include additional limitations in the RFC finding, for time off-task and for social interaction, and that such limitations "were clearly warranted," merely reflects a disagreement with how the ALJ weighed the opinion evidence, which is not a proper basis for remand where, as here, the Court finds that the RFC finding is supported by substantial evidence. *See, e.g., Genier v. Astrue*, 606 F.3d at 49 ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence."). That is, since the Court determines that the ALJ's decision not to adopt the aforementioned additional

limitations referenced in Humbert's opinion is supported by substantial evidence, the Court cannot re-weigh the evidence.

CONCLUSION

For the reasons discussed above, Plaintiff's motion (ECF No. 7) for judgment on the pleadings is granted, and Defendant's cross-motion (ECF No.11) for the same relief is denied.   The Commissioner's decision is reversed, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.   The Clerk of the Court is directed to enter judgment for Plaintiff and close this action.

So Ordered.

Dated: Rochester, New York
        March 19, 2026        ENTER:

CHARLES J. SIRAGUSA
United States District Judge

38